# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

─────────

Argued September 17, 2018          Decided December 7, 2018

No. 17-7169

KENNETH FELD,
APPELLANT

v.

FIREMAN'S FUND INSURANCE COMPANY,
APPELLEE

─────────

Appeal from the United States District Court
for the District of Columbia
(No. 1:12-cv-01789)

─────────

*Jonathan S. Franklin* argued the cause for appellant. With him on the briefs was *Matthew H. Kirtland*.

*Thomas S. Schaufelberger* argued the cause for appellee. With him on the brief was *Matthew J. Antonelli*.

Before: GARLAND, *Chief Judge*, GRIFFITH, *Circuit Judge*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*: Appellant Kenneth Feld ("Feld") retained the law firm of Fulbright & Jaworski, LLP ("Fulbright") in 2008 to defend him in an action brought by his sister, Karen Feld ("Karen"). After a jury trial, Feld prevailed in that action. This case is a follow-up to the action between Feld and his sister. It involves a claim by Feld against appellee, Fireman's Fund Insurance Company ("FFIC"), for reimbursement of expenses, largely attorney fees, that he incurred in the action brought by his sister. According to Feld, FFIC has refused to reimburse him for the full amount of reasonable defense costs associated with the successful representation provided by Fulbright. FFIC, in turn, acknowledges that it agreed to cover Feld's defense costs and that it paid Fulbright over $2.1 million for its representation of Feld. However, FFIC contends that the additional $2.4 million in attorney's fees and costs sought by Feld are based on rates substantially higher than the rates agreed to by the parties.

Feld filed suit against FFIC in the District Court to recover the disputed expense costs. The District Court granted summary judgment in FFIC's favor. The court concluded that the parties had agreed to the rates at which FFIC paid Feld's counsel and, therefore, FFIC had satisfied its obligations to Feld. *Feld v. Fireman's Fund Ins. Co.*, 206 F. Supp. 3d 378 (D.D.C. 2016), *reconsideration denied*, 263 F. Supp. 3d 74 (D.D.C. 2017).

Feld's principal argument before the District Court, and this court as well, is that there was no "agreement" between the parties limiting fees and costs as FFIC suggests. In particular, Feld contends that

> FFIC . . . never identified any written agreement, instead arguing that the purported agreement was struck during

> a telephone call between an FFIC manager and a Fulbright associate and was confirmed when that associate sent an expressly non-binding budget estimating what the representation could cost if FFIC's preferred rates were used. But what transpired during that call was hotly disputed by the two participants, and the budget document expressly disclaimed any binding effect.

Appellant's Br. at 2–3. On this view of the record, Feld argues that the District Court erred in "holding that there was no dispute of material fact as to whether the parties entered into a binding, enforceable agreement." *Id.* at 3. In rejecting Feld's claim, the District Court observed that, "[w]hen the full history of the dealings between Feld (or Fulbright on his behalf) and FFIC is examined, it would take a contortionist to twist the facts to support the absence of a rate agreement." *Feld*, 206 F. Supp. 3d at 389–90. We disagree.

Summary judgment is proper only if, viewing the evidence in the light most favorable to the non-movant and drawing all justifiable inferences in its favor, there are no genuine disputes of material fact for a jury to resolve. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 255 (1986). The record in this case indicates that the parties never reduced any purported rate agreement to writing. Instead, FFIC relies on genuinely disputed communications between the parties' representatives to support its position. And the disputed communications to which FFIC points do not unambiguously show that the parties entered a rate agreement as asserted by FFIC. Summary judgment cannot be granted on these terms. We therefore reverse this portion of the District Court's judgment and remand the case for trial. However, we affirm the District Court's denial of Feld's Motion to Compel certain communications between FFIC and its attorneys.

## I. BACKGROUND

### A. Factual Background

Feld's aunt passed away in September 2007. At the time of her death, the aunt resided in a condo owned by Feld in Washington, D.C. Feld hosted a Shiva – a Jewish mourning ritual – for his aunt in the condo. His sister, Karen, attended the Shiva, but she was eventually removed from the condo building by security guards who had been hired by Feld. In September 2008, Karen filed suit against Feld for injuries allegedly sustained during her removal from the building, raising claims of assault, battery, false imprisonment, intentional infliction of emotional distress, and negligent infliction of emotional distress. *See* Complaint, *Feld v. Feld*, No. 08-cv-01557 (D.D.C. Sept. 9, 2008), *reprinted in* Joint Appendix ("J.A.") 267–99 (the "Underlying Litigation"). Feld retained Fulbright to defend him in the Underlying Litigation. In April 2009, the District Court in the Underlying Litigation dismissed the negligent infliction of emotional distress claim. Feld then filed an Answer and Counterclaim, raising self-defense and defense of property affirmative defenses and countersuing Karen for trespass.

During the relevant time period, Feld held two insurance policies with FFIC: a homeowner's insurance policy and an excess policy. *See* J.A. 194–223 (primary policy); J.A. 224–40 (excess policy). Each of those policies provided liability insurance coverage for bodily injuries to others. Both policies excluded coverage for intentional tort claims, but provided coverage if those acts were committed in defense of self or property. Each policy also provided coverage of legal defense expenses for covered claims.

In June 2009, Feld notified FFIC of Karen's case against him. FFIC assigned the claim to Charles Kirk ("Kirk"), who

was then employed by FFIC as a "high-exposure director." In August 2009, Kirk sent Feld a letter expressing FFIC's agreement to defend Feld in the Underlying Litigation "subject to a full and complete reservation of all of FFIC's rights under the terms and conditions of the Policy." J.A. 345. The August 2009 letter noted that "[a]ll of the claims of the Complaint allege intentional conduct by Kenneth Feld" and, therefore, "are not covered by" Feld's policies. J.A. 353. However, FFIC agreed to pay for a defense "because Mr. Feld has denied the allegations and has alleged that he was acting in 'self-defense.'" *Id.* at 354.

Although FFIC agreed to defend Feld, it reserved the right "to withdraw from the defense of Kenneth Feld in the Underlying Action and to deny coverage when and if further investigation reveals that there is no coverage existing under the Policy [and/or] that Kenneth Feld was not acting in self-defense." *Id.* FFIC further "reserve[d] the right to seek contribution and/or reimbursement from Kenneth Feld for any and all defense costs and/or other monies paid, for which it is determined that there is no coverage." *Id.*

The August 2009 letter also provided:

Subject to [FFIC's] reservation of rights, you may elect to choose your own counsel to defend you in this matter; otherwise we can appoint counsel for you. FFIC agrees to pay, at an agreed hourly rate, the reasonable and necessary legal fees and Court costs incurred by counsel to defend you subsequent to the date this matter was tendered to FFIC under a full reservation of rights . . . .

*Id.* In his deposition, Kirk explained that FFIC had two approaches to paying independent counsel. If FFIC reached a rate agreement with the insured's selected counsel, FFIC would pay all of the fees charged. If a rate agreement was not reached,

however, FFIC would give the insured the option of either "locating other alternative counsel or paying the differential between what [FFIC was] proposing and what [independent counsel] was going to charge." J.A. 422.

In mid-September 2009, Kirk spoke on the phone with Fulbright associate Caroline Mew ("Mew") regarding FFIC payment of Fulbright's fees in the Underlying Litigation. During that conversation, Kirk suggested that FFIC could pay rates as high as $250 per hour for partners, $200 per hour for associates, and $95 per hour for paralegals. *See* J.A. 408. Mew acknowledged these rates but did not accept them during the September call. *See* J.A. 364, 409. In addition, Mew informed Kirk that Fulbright was then billing over $500 per hour. *See* J.A. 408–09.

Kirk and Mew spoke again on October 4, 2009. By this point, Mew had informed Kirk that Feld was planning to remain with Fulbright regardless of the outcome of Fulbright's discussions with FFIC about payment rates. *See* J.A. 427. During his deposition, Kirk testified that, during the October 4 call, he and Mew "discuss[ed] 225 for an associate rather than 200." J.A. 419. Although he could not recall whether Mew ever used the word "agree," his recollection of the October 4 call was that Mew "asked [him] if [he] could increase the rates from the initial ones [he] proposed back in September," he agreed to do so, and she "thanked [him] for that." J.A. 439. Kirk testified that he "took that to mean that going forward, those would be the rates that would be billed on this case." *Id.* Mew, on the other hand, testified that she did not respond to FFIC's proposed rates during the October 4, 2009 phone call. *See* J.A. 366 ("Q: And how did you respond? A: I didn't. He was just telling me FFIC's stated position.").

Following the phone call on October 4, 2009, Kirk sent Mew a follow-up email. That email stated: "As insured selected counsel, we will agree to pay a rate not to exceed $250/hour for partners; $225/hour for associates; and $100/hour for paralegals. Any amount in excess of those rates would continue to be the insured's responsibility." J.A. 521. Kirk also attached FFIC's billing guidelines and requested an "initial evaluation report." *Id.* The billing guidelines attached to the October 4, 2009 email state that an initial evaluation report should include "an itemized budget for the proposed defense." J.A. 523. The billing guidelines also provide that appeals of any "deduction or declination of payment by Fireman's Fund" must be submitted within thirty days or will be deemed waived. J.A. 530.

On October 28, 2009, Mew sent Kirk a proposed budget. *See* J.A. 534–40. The rates in the proposed budget reflected the rates FFIC had agreed to pay in its October 4, 2009 email. *See* J.A. 535. The proposed budget was attached to a cover letter written by Mew, which stated:

> At your request, enclosed herewith is a proposed budget in the above-referenced matter. This is a good faith estimate of the amount of time and expenses we anticipate expending in this case as of the present date. We do not consider this to be a binding representation of the fees and expenses that actually will be incurred in this matter. We ultimately will be guided by our professional judgment to use the time and resources necessary to zealously represent our client's interests.

J.A. 534.

Following Mew's letter and the proposed budget, Erik K. Lindemann ("Lindemann") of Rivkin Radler, LLP ("Rivkin Radler"), sent a response to Mew on November 18, 2009, on

behalf of FFIC. Lindemann objected to many aspects of the proposed budget including the proposed staffing levels and estimated hours, asking Fulbright to "contact Charles Kirk for approval prior to the commencement of any substantial work, including . . . any work involving more than four hours of billable time." J.A. 590–91. Lindemann also noted the existence of a rate agreement. *See* J.A. 591 ("FFIC and Fulbright have agreed on specific hourly rates for the defense of Feld.").

Lisa Zeiler Joiner ("Joiner"), a partner at Fulbright, responded to Lindemann's letter on December 8, 2009. *See* J.A. 598–601. In her letter, Joiner wrote,

> FFIC is currently paying only a fraction of [Fulbright]'s hourly rates with the remaining amounts being charged to Mr. Feld notwithstanding the insurance he has purchased from FFIC. To further attempt to restrict the type of work done or to reduce the hours worked, which [Fulbright] considers necessary for the defense, is inappropriate.

J.A. 599–600. Joiner also addressed a provision in the billing guidelines that creates a thirty day appeal window for deductions or declinations of payment:

> Once [invoices are] submitted, we will not spend additional, extraneous time haggling over the bill with RivkinRadler or anybody else purporting to act on FFIC's behalf. [Fulbright]'s efforts need to be focused at this stage on defending Mr. Feld from the named adversary in the case, the plaintiff, rather than the insurance company. Accordingly, we do not accept the proposal that any disagreements with FFIC regarding deductions or failure to pay [Fulbright]'s invoices must be appealed within 30 days. . . . To simplify matters,

FFIC may presume that [Fulbright] and Mr. Feld contest any and all amounts unpaid by FFIC on any bills presented by [Fulbright] to FFIC for payment unless FFIC is notified otherwise.

J.A. 599.

Fulbright sent FFIC its first bill for defense expenses on August 10, 2010. *See* J.A. 510. That bill reflected billing rates at Fulbright's normal rates, not the rates preferred by FFIC. *See* J.A. 509. On October 11, 2010, FFIC sent a payment to Fulbright adjusted to reflect FFIC's preferred rates. *See* J.A. 636. In a cover letter to which FFIC's check was attached, Kirk wrote, "The hourly rates charged exceeded the agreed upon rates between Fulbright and FFIC. Please see Fulbright's October 28, 2009 budget wherein Fulbright agreed to the following rates: $250/hour for partners; $225/hour for associates; and $100/hour for paralegals." *Id.* Fulbright deposited the check without responding to the cover letter. *See Feld*, 206 F. Supp. 3d at 388.

After a two week trial, a jury found that Feld was not liable, specifically concluding that Karen had failed to prove several of her tort claims and that Feld had acted in self-defense with respect to one claim. *See Feld v. Feld*, 688 F.3d 779, 781 (D.C. Cir. 2012). This judgment was affirmed on appeal. *See id.* at 783.

Following resolution of the Underlying Litigation, Fulbright billed a total of $4.5 million in defense fees and costs, of which FFIC paid $2.1 million, leaving $2.4 million in dispute. Of that $2.4 million, $2.2 million is attributable to a disparity between the hourly rates charged by Fulbright and those paid by FFIC, with the remainder arising from disputed litigation costs. *See* J.A. 28.

**B. Procedural History**

In November 2012, Feld filed this action in the District Court against FFIC to recover the $2.4 million in dispute. Feld claimed that FFIC had breached a contractual obligation to pay reasonable defense fees and expenses. Feld also claimed that FFIC's actions amounted to a breach of the duty of good faith and sought a declaratory judgment that FFIC had an obligation to pay Feld's entire, reasonable defense fees. The District Court granted summary judgment for FFIC on the good faith claim, and Feld does not challenge that decision on appeal. *See Feld*, 206 F. Supp. 3d at 392–93.

In May 2013, during discovery, the District Court largely granted two Motions to Compel filed by FFIC to obtain materials related to Fulbright's communications with Feld regarding the alleged rate agreement. *See* J.A. 63–84 (finding Feld waived the attorney-client privilege); J.A. 93–114 (finding Feld waived the work product privilege). Subsequently, in November 2014, Feld filed a Motion to Compel, seeking "all documents concerning (1) the supposed 'agreement' regarding hourly rates and (2) the reasonableness of Plaintiff's defense costs," including FFIC's communications with Rivkin Radler. J.A. 133. The District Court denied this Motion on attorney-client privilege grounds, concluding that Feld "put both the purported rate agreement and the reasonableness of incurred costs at issue when he filed this suit" and FFIC's response "cannot put at issue questions that were already there." J.A. 136.

After discovery closed, both parties moved for summary judgment. On September 12, 2016, the District Court granted summary judgment for FFIC with respect to the primary dispute between the parties, concluding that the parties entered a binding and enforceable rate agreement and, therefore, Feld

was not entitled to $2.2 million of the $2.4 million in dispute. *See Feld*, 206 F. Supp. 3d at 390. The court denied summary judgment as to the remaining fees and expenses in dispute. *See id.* at 392. After the District Court denied Feld's Motion for Reconsideration of its ruling granting partial summary judgment, the parties filed, and the District Court granted, a stipulated dismissal as to the remaining fees and expenses in dispute.

## II. DISCUSSION

### A. Standard of Review

This court reviews the District Court's ruling on summary judgment *de novo*. *See Aref v. Lynch*, 833 F.3d 242, 250 (D.C. Cir. 2016). In ruling on a motion for summary judgment, both the District Court and this court are obligated to "examine the facts in the record and all reasonable inferences derived therefrom in a light most favorable to" the non-moving party. *Robinson v. Pezzat*, 818 F.3d 1, 8 (D.C. Cir. 2016) (quoting *DeGraff v. District of Columbia*, 120 F.3d 298, 299–300 (D.C. Cir. 1997)). The principal question before the court is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. "This mode of analysis serves to separate the 'jury functions' of making '[c]redibility determinations, . . . weighing . . . the evidence, and . . . drawing . . . legitimate inferences from the facts' from the district court's role as the arbiter of legal questions." *Robinson*, 818 F.3d at 8 (quoting *Anderson*, 477 U.S. at 255).

"[A]lthough a jury might ultimately decide to credit the version of the events described by the defendants over that offered by the plaintiff, this is not a basis upon which a court may rest in granting a motion for summary judgment." *Id.*

(quoting *Arrington v. United States*, 473 F.3d 329, 333 (D.C. Cir. 2006)). A district court's order of summary judgment must be reversed "if, based on the record, inferences contrary to those drawn by the trial court are also plausible." *United States v. Spicer*, 57 F.3d 1152, 1160 (D.C. Cir. 1995) (quoting *Santiago v. Lane*, 894 F.2d 218, 223 (7th Cir. 1990)); *see also Keefe Co. v. Americable Int'l, Inc.*, 169 F.3d 34, 38 (D.C. Cir. 1999) ("Where more than one plausible inference can be drawn from the undisputed facts, summary judgment is not appropriate.").

## B. Existence of a Rate Agreement

This action is based on diversity jurisdiction arising under 28 U.S.C. § 1332. A federal court sitting in diversity applies the choice-of-law rules of the jurisdiction in which it sits. *See, e.g.*, *Bode & Grenier, LLP v. Knight*, 808 F.3d 852, 864 (D.C. Cir. 2015). The District Court held that Maryland law governs the insurance policy, but that D.C. law governs the question of formation of any rate agreement. Because the law of contract formation is the same under D.C. and Maryland law, the court applied D.C. law. *See Feld*, 206 F. Supp. 3d at 384 n.1. The parties do not dispute these conclusions, and we find no error in the District Court's decision. *See USA Waste of Md., Inc. v. Love*, 954 A.2d 1027, 1032 (D.C. 2008) ("A conflict of laws does not exist when the laws of the different jurisdictions are identical or would produce the identical result on the facts presented.").

D.C. courts "adhere[] to an objective law of contracts, meaning that the written language embodying the terms of an agreement will govern the rights and liabilities of the parties regardless of the intent of the parties at the time they entered the contract, unless the written language is not susceptible of a clear and definite meaning." *Carlyle Inv. Mgmt. LLC v. Ace*

*Am. Ins. Co.*, 131 A.3d 886, 894–95 (D.C. 2016) (quoting *Aziken v. District of Columbia*, 70 A.3d 213, 218–19 (D.C. 2013)). The party seeking to establish the existence of an enforceable contract bears the burden of proving that one existed. *See Kramer Assocs., Inc. v. Ikam, Ltd.*, 888 A.2d 247, 251 (D.C. 2005). This includes showing a genuine offer and a valid acceptance of that offer. *See 1836 S Street Tenants Ass'n, Inc. v. Estate of B. Battle*, 965 A.2d 832, 836–37 (D.C. 2009).

Summary judgment on a contract dispute is generally inappropriate unless the dispute is controlled by unambiguous contract language. *See NRM Corp. v. Hercules, Inc.*, 758 F.2d 676, 682 (D.C. Cir. 1985) ("When . . . [contract] language is unclear and the search for intent extends beyond the four corners of the agreement, the intended meaning of the contract is a disputed and, necessarily, material question of fact and summary judgment is improper."). Whether a contract is ambiguous is a question of law for the court. *See Segar v. Mukasey*, 508 F.3d 16, 22 (D.C. Cir. 2007). And an ambiguity will be found to exist if the purported contract "is reasonably susceptible of different constructions." *Id.* (quoting *Bennett Enters., Inc. v. Domino's Pizza, Inc.*, 45 F.3d 493, 497 (D.C. Cir. 1995)).

### 1. Offer and Acceptance

It is undisputed that Feld had two homeowner insurance policies with FFIC. It is also undisputed that FFIC agreed to pay Feld's counsel "reasonable and necessary legal fees" in the Underlying Litigation. J.A. 354. The dispute in this case concerns whether Feld and FFIC reached a binding agreement regarding the hourly rates that would be deemed "reasonable" by the parties. In order to show that a contract was formed, FFIC must show both that an offer was made and that it was unequivocally accepted by Feld.

FFIC proffers two theories regarding purported "offers" between the parties. First, FFIC suggests that an offer was extended by Feld during telephone calls between Kirk and Mew. Kirk's deposition testimony that Mew asked Kirk if FFIC could agree to rates of $250 per hour for partners, $225 per hour for associates, and $100 per hour for paralegals supports this theory. *See* J.A. 439. However, this testimony was directly contradicted by Mew's deposition testimony that she did not make this request or otherwise respond to Kirk's proposed rates. *See* J.A. 366. Crediting Feld's evidence, as the court must do at the summary judgment stage, the phone conversations between Kirk and Mew do not unambiguously show that Mew extended an offer on Feld's behalf. Thus, FFIC's first theory fails.

FFIC's second, and principal, theory is that Kirk extended an offer to Mew via email on October 4, 2009, and that Mew accepted the offer on October 28, 2009, when she sent Kirk the proposed budget incorporating the rates preferred by FFIC. Kirk's email states, in relevant part: "As insured selected counsel, we will agree to pay a rate not to exceed $250/hour for partners; $225/hour for associates; and $100/hour for paralegals." J.A. 521. As we explain below, although this email may have been an offer, an agreement between the parties concerning rates was not unambiguously consummated.

FFIC argues, and the District Court concluded, that a contract was formed no later than October 28, 2009, when Mew sent the proposed budget and cover letter to FFIC. *See Feld*, 206 F. Supp. 3d at 387. However, a reasonable factfinder could conclude that the budget proposal did not constitute an acceptance resulting in a binding contract. The mere incorporation of FFIC's preferred rates in a budget is not, on its face, an acceptance of those rates. Incorporation of the proposed rates in a budget is merely consistent with

acceptance. It is also consistent with the absence of a rate agreement.

A reasonable factfinder could conclude that Mew simply used FFIC's preferred rates in the budget as a placeholder, pending final resolution of any dispute between the parties over the appropriate rates to be paid. In other words, the reference to rates in the budget falls far short of an *unambiguous* agreement between the parties.

Furthermore, the cover letter to which the budget is attached disclaims Fulbright's intention to be bound to the "fees and expenses" stated therein. J.A. 534. We recognize that the cover letter does not explicitly disclaim an intent to be bound to the rates in the proposed budget and does explicitly mention attorney hours and expenses. Nevertheless, the term "fees" can reasonably be construed to include both rates and hours. And Mew explained that her disclaimer regarding fees covered both hours and rates. *See* J.A. 798. Thus, a reasonable factfinder could conclude that Mew's reference to "fees" embraced rates as well as hours.

A reasonable jury might also infer from the other disclaimers in the letter that the budget proposal was nothing more than a provisional estimate. On this point, Feld convincingly argues that "a reasonable juror could conclude that Mew's use of FFIC's proposed rates in preparing a non-binding budget estimate was merely an effort to respond to FFIC's inquiry as to how much the litigation might cost if its rates were used." Appellant's Br. at 30.

In addition, Feld had already decided to have Fulbright represent him regardless of the outcome of Fulbright's discussions with FFIC. Therefore, it was not necessary for Fulbright to resolve the rate at which FFIC would reimburse Fulbright attorneys prior to resolution of the litigation because

Fulbright's defense of Feld would not be affected by FFIC's coverage.

Moreover, a reasonable factfinder might look to the wide gulf between FFIC's proposed rates and Fulbright's normal rates to conclude that the budget proposal was not an acceptance of any offer from FFIC. As FFIC was aware, Fulbright was then billing at rates over $500 per hour for attorney time, substantially more than FFIC seemed willing to pay. Even based on the number of hours Fulbright estimated in its proposed budget, which substantially underestimated the number of hours actually spent on the Underlying Litigation, a decision to agree to FFIC's preferred rates would be quite costly. A reasonable jury could infer from the money at stake that Fulbright would not communicate any acceptance through a proposed budget sent to FFIC by an associate attorney, as opposed to a written contract signed by both parties.

The dealings between FFIC and Feld following submission of the budget proposal on October 28 do not put the dispute to rest because, as the District Court correctly noted, those interactions are a "mixed bag." *See Feld*, 206 F. Supp. 3d at 388. On one hand, Lindemann's November 18 letter states that the parties reached a rate agreement and Joiner's December 8 response to Lindemann does not explicitly dispute this assertion. On the other hand, in her December 8 letter, Joiner characterizes FFIC's rates as the rates FFIC is "currently paying . . . notwithstanding the insurance [Feld] has purchased from FFIC," which is not, on its face, an acknowledgement of a rate agreement. J.A. 599. Significantly, Joiner also asserts in the December 8 letter that Fulbright's "efforts need to be focused at this stage on defending Mr. Feld from the named adversary in the case, the plaintiff, rather than the insurance company." *Id.* Joiner's letter is, therefore, at least consistent with the view that incorporating FFIC's proposed rates into the

budget was done merely to provide an estimate of expenses if FFIC's rates were considered reasonable, rather than an agreement by Feld to those rates.

It is also noteworthy that Fulbright's invoices were calculated at Fulbright's normal billing rates and FFIC's payments were reduced to the rates proposed by FFIC. Fulbright did not object to FFIC's partial payment of its first invoice but, in the December 8 letter, Joiner had already informed FFIC that neither Fulbright nor Feld intended to appeal deductions within thirty days and, "[t]o simplify matters, FFIC may presume that [Fulbright] and Mr. Feld contest any and all amounts unpaid by FFIC on any bills presented by [Fulbright] to FFIC for payment unless FFIC is notified otherwise." *Id.* In this context, it says little that Fulbright failed to object to FFIC's deductions from its first invoice.

We recognize that a reasonable jury might find that a rate agreement was formed. If a jury credited Kirk's testimony that Mew asked him to raise his proposed rates and he agreed to do so, her use of the rates in the budget proposal could be evidence that the parties reached an oral rate agreement during the October 4 phone call. Or, FFIC might persuade a jury that by incorporating the rates in the proposed budget and failing to disclaim a rate agreement in either the cover letter attached to the proposed budget or Joiner's December 8 letter, Feld accepted FFIC's rates. But such a conclusion cannot be reached as a matter of law. *See Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . .").

In sum, while a reasonable factfinder might conclude that the parties agreed to rates, "inferences contrary to those drawn

by the trial court are also plausible." *Spicer*, 57 F.3d at 1160 (quoting *Santiago*, 894 F.2d at 223). Therefore, summary judgment was improper.

### 2. Material Terms

On appeal, Feld further argues that no agreement was formed because "the parties' course of dealing shows that no agreement was reached on numerous material terms, even putting aside the question of rates." Appellant's Br. at 20. However, Feld failed to raise this argument with the District Court and, thus, forfeited it. This court does not consider forfeited arguments absent "exceptional circumstances." *Flynn v. Comm'r*, 269 F.3d 1064, 1068–69 (D.C. Cir. 2001) (quoting *Marymount Hosp., Inc. v. Shalala*, 19 F.3d 658, 663 (D.C. Cir. 1994)). Feld has not argued that this case meets the "exceptional circumstances" standard, nor are exceptional circumstances apparent. Therefore, we decline to reach Feld's argument that the purported agreement fails for lack of material terms.

### 3. Consideration

In addition to arguing that there was no rate agreement, Feld argues that the purported agreement fails for lack of consideration. Before the District Court, Feld argued that "no contract could have formed between Fulbright and FFIC for lack of consideration given that all FFIC stated it would do was pay what it considered to be the amounts it already was obligated to pay under the Policy as reasonable and necessary defense costs." *Feld*, 206 F. Supp. 3d at 389. He presses the same argument with this court. We reject this claim because it is both illogical and meritless.

The D.C. Court of Appeals has explained that,

> In determining whether a valid contract exists, [the court] "will not inquire into the adequacy of" consideration, even where it is "arguably slight," as long as it is "legally sufficient." *Riggs v. Aetna Ins. Co.*, 454 A.2d 818, 821 (D.C.1983). "An exchange of promises" or a "detriment to the promisee" constitutes legally sufficient consideration, "so long as it is bargained-for." *Pearsall v. Alexander*, 572 A.2d 113, 118 (D.C.1990) (citing RESTATEMENT (SECOND) OF CONTRACTS § 75 (1932)).

*Wash. Inv. Partners of Del., LLC v. Sec. House, K.S.C.C.*, 28 A.3d 566, 574–75 (D.C. 2011). This is the starting point in determining what constitutes legally sufficient consideration.

Feld argues that the disputed agreement, which included FFIC's preferred rates for attorney fees, was not supported by legally sufficient consideration because FFIC had a preexisting duty to pay Feld's selected counsel at a reasonable rate. *See* Appellant's Br. at 38–45. Feld bases this argument on his view of the Maryland duty to defend doctrine. *See Brohawn v. Transamerica Ins. Co.*, 347 A.2d 842, 854 (Md. 1975). According to Feld, because he has a conflict of interest with the insurer, FFIC is obligated under Maryland law to pay counsel of Feld's choice at a reasonable rate. Even accepting Feld's claims regarding the requirements of Maryland law and the existence of a conflict of interest, his claim that the purported agreement lacked consideration makes no sense.

If, as Feld claims, he is entitled to an attorney of his choice, that obligation was met when FFIC agreed to his choice of counsel. As to Feld's claim for "reasonable rates" for attorney's fees, FFIC did nothing to abrogate this alleged right. FFIC merely argued before the District Court that Feld *agreed* to the rates to be paid to his attorneys and that this agreement satisfied

the insurer's obligation to pay reasonable rates for attorney fees. Feld does not contend that "reasonable rates" are defined by Maryland's duty to defend obligation. Nor does he question the right of the parties to agree on specific rates. So, of course, he does not doubt that parties may reach an agreement, for their mutual interests, on reasonable rates. Legally sufficient consideration surely supports any such agreement.

If the parties do not agree on "reasonable rates," as Feld claims is the case here, then the matter will be subject to a disposition in a court of law. On remand, when this matter goes to trial, a jury will determine whether the parties reached an agreement on reasonable rates for attorney's fees, as FFIC claims and the District Court found. If so, the matter is over, because the jury will have determined that the parties are bound by a mutually acceptable agreement on reasonable rates. If the jury reaches a verdict in favor of Feld and finds that no agreement was reached, then a determination will have to be made regarding reasonable rates for fees. In sum, Feld's argument about consideration is much ado about nothing.

Any other conclusion would amount to a holding that parties to an insurance contract cannot, as a matter of law, enter a rate agreement where there is a conflict of interest between the insurer and the insured. We can find nothing in Maryland or D.C. law to support this conclusion. Indeed, Feld has not urged such a result. Instead, Feld focuses on the specific rates purportedly offered by FFIC. But that is not the point. FFIC does not contend that the rates it prefers are what a jury might find to be reasonable. Rather, FFIC contends that Feld agreed to the rates and that the parties' purported agreement resolved any dispute over "reasonable rates." If FFIC is right, then the matter is at an end because, as noted above, the adequacy of consideration is not a matter for the court to determine. *See Wash. Inv. Partners of Del., LLC*, 28 A.3d at 574–75. If the

jury rules in Feld's favor, however, then the question of reasonable rates for fees will remain to be determined. Therefore, Feld's consideration argument fails.

## C. Ruling on Motion to Compel

Finally, Feld appeals the District Court's December 19, 2014, Ruling denying his Motion to Compel. *See* J.A. 135–38. As noted above, Feld's motion sought "all documents concerning (1) the supposed 'agreement' regarding hourly rates and (2) the reasonableness of Plaintiff's defense costs," including FFIC's communications with its attorney Rivkin Radler. J.A. 133. The District Court concluded that these communications were protected by attorney-client privilege, and that FFIC had not waived the privilege.

We review discovery rulings for abuse of discretion. *See Kapche v. Holder*, 677 F.3d 454, 468 (D.C. Cir. 2012). And we will not overturn a trial judge's discovery ruling unless it is "clearly unreasonable, arbitrary, or fanciful." *Id.* (quoting *Bowie v. Maddox*, 642 F.3d 1122, 1136 (D.C. Cir. 2011)). We hold that on the record before us, the District Court was within its discretion to deny Feld's Motion to Compel.

The essence of Feld's argument is that, because the District Court ruled in 2013 that *Feld* had waived both the attorney-client privilege and the work-product privilege by placing his communications with Fulbright "in issue," it was unreasonable and arbitrary for the District Court not to reach the same conclusion with respect to the communications between FFIC and its attorney. However, the situations were not comparable.

First, under D.C. law, it is well established that a party seeking indemnification for attorney fees waives the attorney-client privilege "with respect to [billing statements] and any

other communications going to the reasonableness of the amount of the fee award." *Ideal Elec. Sec. Co., Inc. v. Int'l Fidelity Ins. Co.*, 129 F.3d 143, 152 (D.C. Cir. 1997) (applying D.C. law). The same rule does not apply to communications between an insurer and its attorney.

Second, Feld was represented throughout all discussions with FFIC by his counsel at Fulbright, who acted as his agent. FFIC, however, was represented by Kirk. FFIC's attorney at Rivkin Radler did not communicate with Fulbright until November 2009, after the rate agreement was allegedly formed.

In sum, it was neither unreasonable nor arbitrary for the District Court to view Feld's communications with Fulbright differently than it did the communications between FFIC and Rivkin Radler. And the District Court did not err in determining that FFIC did not waive the attorney-client privilege regarding communications with Rivkin Radler.

### III. CONCLUSION

For the reasons explained above, we vacate the District Court's grant of partial summary judgment for FFIC as to the existence of a rate agreement and remand for trial on this issue. However, we affirm the District Court's ruling rejecting Feld's Motion to Compel.

*So ordered.*