# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued February 14, 2025          Decided September 5, 2025

No. 23-7157

CATHERINE JONES,
APPELLANT

v.

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:21-cv-01952)

———

*Donna Williams Rucker* argued the cause and filed the briefs for appellant.

*Michael K. Guss* argued the cause and filed the brief for appellee.

Before: SRINIVASAN, *Chief Judge*, KATSAS and GARCIA, *Circuit Judges*.

Opinion for the Court filed by *Chief Judge* SRINIVASAN.

SRINIVASAN, *Chief Judge*: This case concerns the proper reading of an agreement settling claims brought by a union against an employer in a union grievance process. The union's grievance charges asserted bullying and unfair performance evaluation on an employee's behalf. The employee separately filed a Title VII discrimination suit against her employer in the district court based on some of the same underlying factual allegations.

The district court held that the settlement agreement in the union grievance process barred the employee's Title VII suit and so granted summary judgment to the employer. We hold that the agreement resolved only the union grievance claims under the collective bargaining agreement and did not purport to affect the employee's Title VII action. We therefore vacate the district court's grant of summary judgment to the employer and remand for further proceedings.

I.

Catherine Jones, the plaintiff in this case, began working at Washington Metropolitan Area Transit Authority (WMATA) in 2006. Jones is part of the Office and Professional Employees International Union, Local 2, and is covered by Local 2's Collective Bargaining Agreement (CBA) with WMATA. When Local 2 alleges a violation of the CBA on behalf of an employee, the union's claim proceeds through a grievance process with WMATA.

In 2020 and 2021, Local 2 brought two grievances on behalf of Jones of relevance here. First, in Grievance GMS2020-464, Local 2 charged WMATA with unsatisfactory and improper performance evaluations of Jones. Second, Grievance GMS2020-465 charged WMATA with "Bullying by Manager"—specifically, bullying of Jones by her supervisor, Steven Segerlin.

In July 2021, as the union grievance process went forward on those two charges, Jones filed this lawsuit against WMATA in the district court, bringing claims under Title VII and 42 U.S.C. § 1981. She alleges "discrimination based on her race (African-American), hostile work environment, and retaliation for engagement in protected EEO [Equal Employment Opportunity] activity." Complaint ¶ 1 (J.A. 809). Her suit generally contends that, from 2017 to 2020, WMATA's management (including Segerlin) subjected her to discrimination and harassment based on her race and to retaliation for raising complaints about her treatment. Several of the specific allegations of conduct that she contends was discriminatory or retaliatory in her lawsuit involve the same conduct that Local 2 alleged was in breach of the CBA in the two union grievances it brought on her behalf.

On December 2, 2021, Local 2 reached a settlement agreement with WMATA in the union grievance process. The one-page agreement states in pertinent part:

> This letter is written to document a Settlement Agreement entered into by the parties to address the issues raised in the Local 2 grievances, GMS2020-464 (Untimely Performance Evaluation) and GMS2020-465, (Bullying by her Manager) on behalf of Senior Transit Planner, Facilities, Catherine Jones ID# 007741, regarding her concern about her being unfairly treated by her current management. The parties (WMATA and Local 2) on behalf of Ms. Jones . . . have agreed to resolve this grievance in the following manner:

1.  The parties agree that Ms. Catherine Jones ID#007741 will be allowed to transfer her current position [to a different office]. . . .

2.  The parties agree that as part of this settlement, Ms. Catherine Jones ID#007741 withdraws any and all outstanding contract grievances including GMS2020-464 and GMS2020-465, with prejudice. . . .

3.  The parties agree that this agreement satisfies all claims of the grievances GMS2020-464 and GMS2020-465 raised by the Union on behalf of Ms. Catherine Jones' ID#007741 and does not set any precedent for any other grievance for any other employee.

J.A. 1099.  The signatures of a representative of each of the two "parties (WMATA and Local 2)" specified in the agreement— the Vice President of Labor Relations of WMATA and the Assistant Chief Shop Steward of Local 2, respectively—are affixed to the bottom of the agreement.  *Id.*  The agreement does not provide for (or contain) Jones's signature.

The following day, December 3, 2021, the same WMATA official who signed the settlement agreement sent a two-page memorandum to Jones, attaching the agreement.  The memorandum states that Jones would be transferred pursuant to the settlement agreement and specifies when she should report to her new position.  In closing, the memorandum requests that Jones sign the document to acknowledge her receiving the information provided in it, which she did three days later, on December 6, 2021.  *Id.* at 1098.

5

In January 2023, WMATA filed a motion for summary judgment in this case, contending that the settlement with Local 2 in the union grievance process foreclosed Jones's lawsuit. The district court agreed.

The court held that Jones's action is "barred by the settlement agreement" and that "the Court need not address the merits of the plaintiff's Title VII claims." *Jones v. Washington Metro. Area Transit Auth.*, No. CV 21-1952 (RBW), 2023 WL 6621100, at *3 (D.D.C. Oct. 11, 2023). The court read the language of the settlement agreement to constitute an unambiguous release of all claims "arising from the relevant grievances—*i.e.*, all claims relating to the alleged (1) unsatisfactory performance evaluations and (2) bullying by the plaintiff's manager." *Id.* at *5. The court then compared the allegations in the union grievances and those in this case and found that they centered on the same facts and sought similar forms of relief. *Id.* at *5–*7. As a result, the court "conclude[d] that the Title VII claims raised in the plaintiff's Complaint arise from the relevant grievances" and are "barred by the settlement agreement." *Id.* at *7.

II.

We review the district court's grant of summary judgment de novo. *See Katopothis v. Windsor-Mount Joy Mutual Insurance Co.*, 905 F.3d 661, 667 (D.C. Cir. 2018). "Summary judgment on a contract dispute is generally inappropriate unless the dispute is controlled by unambiguous contract language." *Feld v. Fireman's Fund Ins. Co.*, 909 F.3d 1186, 1194 (D.C. Cir. 2018).

We reject WMATA's argument that Jones's Title VII claim is included within the scope of the settlement agreement between Local 2 and WMATA. Setting aside whether a union could validly settle a worker's Title VII claim without her

affirmative participation and consent, the settlement agreement in this case cannot be read to cover Jones's Title VII claims, let alone do so in the kind of "unambiguous" language necessary to warrant granting summary judgment in WMATA's favor. *Id.*

We construe the settlement agreement like any contract, under "general principles of contract law." *Dyer v. Bilaal*, 983 A.2d 349, 354 (D.C. 2009) (citation omitted). The agreement's plain language is addressed specifically to settlement of the union's grievance claims for breach of the CBA, and it does not purport to treat with Jones's then-pending lawsuit alleging a violation of Title VII. The two types of claims are fundamentally distinct: "a grievance is designed to vindicate a contractual right under a CBA, while a lawsuit under Title VII asserts independent statutory rights accorded by Congress." *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 76 (1998) (quotation marks omitted).

The key language of the settlement agreement states that: it is "entered into by the parties to address the issues raised in the Local 2 grievances, GMS2020-464 . . . and GMS2020-465"; it "resolve[s] this grievance in the following manner"; and it "satisfies all claims of the grievances GMS2020-464 and GMS2020-465 raised by the Union." J.A. 1099. In every respect and at every turn, the terms are directed to Local 2's union grievances, not Jones's Title VII suit: the language states that the agreement "address[es] the issues raised *in the Local 2 grievances*" and then specifies the grievance numbers; it reiterates that the agreement "resolve[s] *this grievance*"; and then it provides that the "agreement satisfies all claims *of the grievances*" and repeats the grievance numbers. *Id.* (emphasis added). And in reinforcing its focus on "the grievances," the agreement, upon stating that it "satisfies" the "claims of the grievances," specifies that it "does not set any precedent for

*any other grievance*." *Id.* (emphasis added). Throughout, the focus is on the union grievances, and on union grievances alone.

That is understandable, as the parties to the agreement are the parties to the grievances being settled: the union, Local 2, and the employer, WMATA. The agreement itself makes that clear, saying that "[t]he parties (WMATA and Local 2) . . . have agreed to resolve this grievance in the following manner." *Id.* Those are also the parties to the CBA, and the grievances allege breaches of that CBA, to be resolved through a union-employer grievance process agreed to by those parties in the CBA. And because the settlement agreement resolved grievances between those two parties under the CBA, there is no reason to suppose it would pertain to a different action (under Title VII) pending in a different forum (district court) filed by a different party (Jones).

To be sure, Local 2 brought its union grievances "on behalf of" Jones, as the agreement states. *Id.* But that does not make Jones herself a consenting party to the agreement between Local 2 and WMATA. That is why the agreement is executed by representatives of Local 2 and WMATA and contains no place for Jones's signature. To the contrary, Jones's signature is affixed to a separate, subsequent document: the memorandum sent by WMATA to her the next day advising her that she would be transferred pursuant to the attached (and already executed) settlement agreement and requesting her to acknowledge her receipt of it. And just as Jones is not a listed party to the settlement agreement with WMATA (rather, Local 2 is because it's Local 2's grievance), Local 2 is not a party to the Title VII action against WMATA (rather, Jones is, because it's Jones's lawsuit).

WMATA seeks to make much of the fact that the agreement says it "satisfies all claims of the grievances GMS2020-464 and GMS2020-465." *Id.* To WMATA, that language suggests resolution of all claims somehow connected to those specific grievances, even encompassing claims in a lawsuit that reference some of the same underlying facts alleged in the grievances. There is no cause to read the agreement to intend any such understanding. Had Local 2 and WMATA in fact sought to reach and resolve a pending claim brought by Jones in a lawsuit—even assuming they could do so—they presumably would have specified as much through language referencing that action. The reference to "all claims of the grievances" cannot be read to suggest any such intent. Those words again speak to the "claims *of the grievances*," not claims of a separate lawsuit in another forum. And they refer to "*all* claims" simply to make clear that they resolve every claim in the grievances rather than a subset of those claims— not to suggest an intent to reach claims *not* "of the grievances" but of a lawsuit asserting violations of Title VII. Indeed, while the underlying conduct giving rise to the claims overlaps, the grievances allege that the conduct works a breach of contract (the CBA) without once mentioning that it constitutes discrimination based on race.

Notably, when the agreement does speak to matters beyond the specific union grievances at issue—"grievances GS2020-464 and GMS 2020-465," *id.*—it expressly says so; and even then, it is confined to union grievances under the parties' CBA, not matters beyond grievances like a Title VII action in court. In particular, the agreement states that "as part of this settlement, Ms. Catherine Jones ID#007741 withdraws any and all outstanding contract grievances including GMS2020-464 and GMS2020-465, with prejudice." *Id.* Local 2 thereby agreed to resolve any other pending union grievances it may have brought on Jones's behalf against WMATA

asserting breach of the CBA. But there is no indication that the parties contemplated Jones herself would withdraw her pending Title VII action. *Cf. Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 50 (1974) ("The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence.").

Finally, the specific context of a potential waiver of Title VII rights further counsels against reading the settlement agreement to reach beyond Local 2's breach of contract claims. The Supreme Court has said that a "clear and unmistakable" standard applies to any potential union waiver of an employee's procedural "right to a judicial forum for claims of employment discrimination." *Wright*, 525 U.S. at 80. Insofar as a union could waive an employee's pending, substantive claim of employment discrimination in a judicial forum, the waiver would have to be at least as clear. The settlement agreement in this case does not approach such a standard.

\* \* \* \* \*

For the foregoing reasons, we vacate the district court's grant of summary judgment and remand for further proceedings.

*So ordered.*