# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued March 8, 2019        Decided May 21, 2019

No. 18-7102

RONALD EUGENE DUBERRY, ET AL.,
APPELLEES

v.

DISTRICT OF COLUMBIA,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:14-cv-01258)

*Mary L. Wilson*, Senior Assistant Attorney General, Office of the Attorney General for the District of Columbia, argued the cause for appellant. With her on the briefs were *Karl A. Racine*, Attorney General, *Loren L. AliKhan*, Solicitor General, and *Caroline S. Van Zile*, Deputy Solicitor General.

*Aaron Marr Page* argued the cause for appellees. With him on the brief was *F. Peter Silva*.

*Dan M. Peterson* was on the brief for *amici curiae* Western States Sheriffs' Association, et al. in support of appellees and in support of affirmance.

Before: ROGERS and WILKINS, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

Opinion by *Circuit Judge* ROGERS concurring in part.

EDWARDS, *Senior Circuit Judge*: Subject to certain conditions, the Law Enforcement Officers Safety Act ("LEOSA") authorizes "qualified retired law enforcement officer[s]" to carry concealed firearms. 18 U.S.C. § 926C(a). Ronald DuBerry, Maurice Curtis, and Robert Smith ("Appellees") formerly served as correctional officers with the Washington, D.C. Department of Corrections ("DCDOC"). After they had separated from service in good standing, *see id.* § 926C(c)(1), Appellees sought to invoke LEOSA so that they would be able to carry concealed firearms as "qualified retired law enforcement officers." The District of Columbia ("District") refused to issue the necessary certification forms for Appellees, however. The District claimed that, as former corrections officers, Appellees never had statutory powers of arrest and, therefore, could not claim any rights under LEOSA. Appellees then initiated an action under 42 U.S.C. § 1983 seeking declaratory and injunctive relief to require the District to recognize them as "qualified retired law enforcement officers" for purposes of LEOSA. The District Court dismissed Appellees' complaint for failure to state a claim. This court reversed and remanded the case to the District Court for further proceedings. *DuBerry v. District of Columbia* ("*DuBerry I*"), 824 F.3d 1046 (D.C. Cir. 2016).

In *DuBerry I*, we found that "LEOSA's plain text, purpose, and context show that Congress intended to create a concrete, individual right to benefit individuals like [Appellees] and that

is within the competence of the judiciary to enforce." 824 F.3d at 1054–55 (citation omitted). We rejected the District's theory that rights under LEOSA "attach" only after officers have obtained requisite identifications. *Id.* at 1055. We therefore held that Appellees had "sufficiently alleged that the federal right they seek to enjoy has been unlawfully deprived by the District of Columbia to be remediable under Section 1983." *Id.*

On remand, the District Court granted summary judgment for Appellees, holding that they had met three of LEOSA's statutory requirements necessary to be considered "qualified retired law enforcement officers." *DuBerry v. District of Columbia*, 316 F. Supp. 3d 43, 58 (D.D.C. 2018). Specifically, the court found that each Appellee, in his prior position, possessed "statutory powers of arrest," served as a "law enforcement officer" for an aggregate of at least 10 years, and separated from service in good standing. *See* 18 U.S.C. § 926C(c). Appellees did not ask the District Court to determine whether they had "identifications" sufficient to satisfy the requirements of 18 U.S.C. § 926C(d). Therefore, the court did not address this issue. Instead, the District Court simply noted that "whether or not [Appellees] have sufficient identification is irrelevant for purposes of determining whether they have met certain statutory preconditions to be considered 'qualified retired law enforcement officers.'" *DuBerry*, 316 F. Supp. 3d at 58. The District now appeals.

The District presses two arguments on appeal. The principal claim raised by the District is that, under LEOSA, "to carry a concealed weapon, an individual must be both a qualified retired law enforcement officer *and* hold an identification issued by his former government employer stating that he was a law enforcement officer." District Br. at 14 (emphasis in original). Therefore, according to the District, "since [Appellees] lack the proper identification, they have no

enforceable right that is remediable under Section 1983." *Id.* at 15. The District also suggests that Appellees lack standing to pursue this action, because "even assuming [Appellees] have a viable claim under Section 1983," they have failed to "show a causal link between the District's alleged misconduct and their injury." *See id.* at 16. In other words, according to the District, Appellees have "failed to show that, but for the District's refusal to complete their employment certification forms, they would have been entitled to carry under LEOSA." *Id.*

We find no merit in the District's contentions. The first argument is foreclosed by *DuBerry I*. The second argument completely misapprehends the relief sought and obtained by Appellees in this litigation. Appellees are not seeking a declaration that they are entitled to carry firearms pursuant to LEOSA. Rather, they have sought to overturn the District's unlawful refusal to certify them as "qualified retired law enforcement officers," which is necessary in order for them to pursue the right to carry under LEOSA. Therefore, it does not matter whether Appellees have yet to obtain the identifications required by Section 926C(d). As the District Court correctly noted, the requirements of Section 926C(d) are not at issue in this case. We therefore affirm the judgment of the District Court.

## I.   BACKGROUND

### A.  The Law Enforcement Officers Safety Act

The District Court's opinion cogently explains the relevant portions of LEOSA, as follows:

> Before 2004, a patchwork of state laws governed whether out-of-state current or former law enforcement officers could carry a concealed firearm within a

particular state's borders. . . . Beginning in 1992, lawmakers introduced legislation aimed at permitting concealed carry nationwide for certain law enforcement officers. . . . Efforts succeeded in 2004 with the enactment of the Law Enforcement Officers Safety Act, known as "LEOSA." *See* LEOSA, Pub. L. 108–277, 118 Stat. 865[, 866] (2004) (*codified at* 18 U.S.C. §§ 926B, 926C).

LEOSA mandates that all active and retired law enforcement officers be able to carry a concealed firearm anywhere in the United States subject to certain conditions, overriding most contrary state and local laws. . . . LEOSA provides that, "[n]otwithstanding any other provision of the law of any State or any political subdivision thereof," a "qualified law enforcement officer" or "qualified retired law enforcement officer" "may carry a concealed firearm that has been shipped or transported in interstate or foreign commerce," so long as the individual also carries the requisite identification. 18 U.S.C. §§ 926B(a), 926C(a).

. . . .

Section 926C sets forth the requirements to be considered a "qualified retired law enforcement officer," which differ in some respects from the qualifications for active officers. *See id.* § 926C(c). To qualify for LEOSA rights, a retired employee must have "separated from service in good standing . . . with a public agency as a law enforcement officer." *Id.* § 926C(c)(1). The individual must also meet the relevant standards for qualification in firearms training; must not have been found unqualified for reasons related to mental health; must not be under the influence of alcohol or another intoxicating substance; and must not be prohibited by

federal law from receiving a firearm. *Id.* § 926C(c)(4)–(7). In addition, before separating from the agency, the individual must have "served as a law enforcement officer for an aggregate of 10 years or more"; must have had legal authority to "engage in or supervise the prevention, detection, investigation, or prosecution of, or the incarceration of any person for, any violation of law"; and must have had either "statutory powers of arrest" or powers of apprehension pursuant to 10 U.S.C. § 807(b). 18 U.S.C. § 926C(c)(2)–(3). Qualified retired law enforcement officers must carry "photographic identification issued by the agency . . . that identifies the person as having been employed as a police officer or law enforcement officer." *Id.* § 926C(d)(1), (2)(A). And, if the agency-issued identification does not indicate that the retired officer has completed the appropriate firearms training, the officer must carry a separate certification form so establishing. *Id.* § 926C(d)(2).

*DuBerry v. District of Columbia*, 316 F. Supp. 3d at 45–46.

## B. Background Facts

Appellees worked as correctional officers with the DCDOC for at least sixteen years before retiring in good standing. As correctional officers, they were responsible for the treatment, custody, counseling, and supervision of individuals incarcerated in District correctional facilities. Following their retirements, and starting in approximately November 2012, Appellees individually sought to exercise concealed-carry rights under LEOSA.

The District Court's opinion lucidly recounts the facts leading to Appellees' initiation of this litigation after the

District denied their requests for certifications required by LEOSA:

> In Prince George's County, Maryland (where [Appellee] Duberry and [Appellee] Curtis reside) and in the District of Columbia (where [Appellee] Smith resides), an individual must submit a prior employment certification form completed by the law enforcement agency for which he previously worked before seeking firearm certification. On this certification form, the agency must answer a series of questions by checking boxes for "yes" or "no." One question asks whether the applicant, while employed, possessed various authorizations enumerated in subsection (c)(2) of LEOSA, including "statutory powers of arrest." Relatedly, another question asks whether the applicant was "regularly employed as a law enforcement officer" for the indicated duration of time.

> In response to both of these questions on [Appellee] Duberry's prior employment certification form, a DCDOC human resources officer checked the boxes for "no" and wrote that Mr. Duberry was "not a law enforcement officer." DCDOC took the same position with respect to the other [Appellees], with the agency's former director explaining to [Appellees'] counsel that the agency does not believe that active or retired correctional officers of DCDOC meet all of the LEOSA requirements.

> In July 2014, [Appellees] initiated this action against the District of Columbia . . . . [Appellees'] amended complaint alleged that [the District's] actions had denied them rights under LEOSA in violation of 42 U.S.C. § 1983. [Appellees] contended that they met all of the LEOSA conditions, including that they had "statutory

powers of arrest." In support of this claim, [Appellees] asserted that they were given identification cards stating that they had such powers under D.C. Code § 24–405. [Appellees] sought injunctive and declaratory relief requiring [the District] to recognize them as retired law enforcement officers for purposes of LEOSA.

. . . .

Interpreting [Appellees'] complaint as seeking "the right to have [DC]DOC classify them as retired 'law enforcement officers' under subsection (c)(2) for purposes of completing their application[s] for [] concealed carry permit[s]," the [District Court] could not say that Congress intended to confer upon [Appellees] the right that they sought to enforce in this action. Rather, the Court construed LEOSA as conferring only one right—the right to carry a concealed firearm—and doing so only with respect to individuals who already have status as "qualified retired law enforcement officer[s]" and who already possess the identification documents required by subsection (d). Accordingly, [the District Court] explained that even if the District had misclassified [Appellees]—an issue that [the District Court] did not reach—[Appellees] could not seek to correct that error through § 1983.

316 F. Supp. 3d at 47–48 (citations omitted); *see also DuBerry v. District of Columbia*, 106 F. Supp. 3d 245 (D.D.C. 2015) (District Court's initial decision).

## C. This Court's Decision in *DuBerry I*

This court reversed the District Court's judgment in favor of the District. *DuBerry v. District of Columbia* ("*DuBerry I*"), 824 F.3d 1046 (D.C. Cir. 2016). The court applied the three-

factor test enunciated in *Blessing v. Freestone*, 520 U.S. 329 (1997), and concluded that Appellees' lawsuit rested on a viable cause of action under 42 U.S.C. § 1983. *DuBerry I*, 824 F.3d at 1051–55. Under *Blessing*, a statute creates a right enforceable under Section 1983 if (1) "Congress . . . intended that the provision in question benefit the plaintiff," (2) "the plaintiff . . . demonstrate[s] that the right assertedly protected by the statute is not so 'vague and amorphous' that its enforcement would strain judicial competence," and (3) "the statute . . . unambiguously impose[s] a binding obligation on the States" using "mandatory, rather than precatory, terms." 520 U.S at 340–41 (citation omitted).

In addressing the first *Blessing* factor, the court in *DuBerry I* concluded that Congress enacted LEOSA to directly benefit retired officers such as Appellees. *See* 824 F.3d at 1052. Notably, the court pointed out that LEOSA afforded a right not only to police officers, but also to "correctional officers and parole authorities who 'engage[d] in . . . the incarceration of any person for[ ] any violation of law.'" *Id.* (quoting 18 U.S.C. § 926C(c)(2)).

Regarding the second *Blessing* factor, the court in *DuBerry I* found that the right to carry under LEOSA, which Appellees sought to secure, was not "vague and amorphous." *Id.* at 1053 (citation omitted). The court found it significant that Congress had set forth clear statutory criteria for defining the LEOSA right and for determining eligibility under the statute. *See id.* The court also was satisfied that an individual's eligibility can be readily determined in judicial proceedings through record evidence and the interpretation of relevant state and local laws. *See id.* The court thus concluded that LEOSA is readily susceptible to judicial enforcement. *See id.*

Finally, regarding the third *Blessing* factor, the court in *DuBerry I* highlighted Congress's "categorical preemption of state and local law standing in the way of the LEOSA right to carry," and concluded that states have a "mandatory duty" to "recognize the right" LEOSA establishes. *Id.* The court was clear in its determination that Congress did not afford states the discretion to "redefine either who are 'qualified law enforcement officers' or who is eligible for the LEOSA right." *Id.*

In sum, in *DuBerry I*, the court held that LEOSA's plain text "confers upon a specific group of individuals a concrete right the deprivation of which is presumptively remediable under Section 1983." *Id.* at 1053–54. Accordingly, we reversed the District Court's judgment in favor of the District and remanded for further proceedings.

## D. The District Court's Decision on Remand

Following this court's decision to remand in *DuBerry I*, the District Court denied the District's motion for summary judgment and granted Appellees' cross-motion for summary judgment. *DuBerry v. District of Columbia*, 316 F. Supp. 3d 43, 45, 50 (D.D.C. 2018). In concluding that Appellees meet the statutory preconditions to be considered "qualified retired law enforcement officers," the District Court made three principal findings.

First, the court found that Appellees had "statutory powers of arrest" under 18 U.S.C. § 926C(c)(2). 316 F. Supp. 3d at 50–54. "[B]ecause the record shows that [Appellees] were 'officer[s] of the District of Columbia penal institutions'—a fact that the District does not contest— . . . D.C. Code § 24–405 authorized them to execute warrants for the arrest of

parole violators, satisfying the LEOSA 'statutory powers of arrest' requirement." 316 F. Supp. 3d at 54 (citation omitted).

Second, the court found "that each [Appellee] worked as [a] DCDOC corrections officer—a role in which they 'engage[d] in or supervise[d] . . . the incarceration of . . . [people],' 18 U.S.C. § 926C(c)—for at least ten years. Accordingly, the Court conclude[d] that each [Appellee] has met the requirement outlined in subsection (c)(3)(A) of LEOSA." 316 F. Supp. 3d at 57.

Third, the court "reject[ed] the District's argument that [Appellees] must prove that they have photographic identification that satisfies subsection (d) before the Court can grant their motion for summary judgment." 316 F. Supp. 3d at 57. On this point, the District Court explained that,

> [i]n [*DuBerry I*], the Circuit explicitly rejected the notion that [Appellees] might "lack the [LEOSA] right until they obtain the subsection (d)(2)(B) firearms certification." *Duberry I*, 824 F.3d at 1055. In the Circuit's view, "the firearm certification requirement does not define the right itself but is rather a precondition to the exercise of [the LEOSA] right." *Id.* The District appears to offer a different version of this argument, asserting that [Appellees] must prove that they meet other preconditions for exercising LEOSA rights before they can be deemed "qualified retired law enforcement officers" to whom Congress conferred LEOSA rights. This Court thinks that, just as the firearm certification did not define the LEOSA right, the possession of a photographic identification that is required to exercise the right does not define the LEOSA right.

316 F. Supp. 3d at 57 (citation omitted). As we explain below, the District Court's understanding of the decision in *DuBerry I* is exactly right.

It is also noteworthy that Appellees did not ask the District Court to determine whether they had "identifications" sufficient to satisfy the requirements of 18 U.S.C. § 926C(d). Therefore, the District Court did not address this issue. Instead, the District Court simply noted that "whether or not [Appellees] have sufficient identification is irrelevant for purposes of determining whether they have met certain statutory preconditions to be considered 'qualified retired law enforcement officers.'" 316 F. Supp. 3d at 58.

The District now appeals, arguing that summary judgment was improper because Appellees are not the intended beneficiaries of LEOSA and, even if they are beneficiaries under the statute, they lack standing to pursue this action. For the reasons explained below, we find no merit in the District's claims.

## II.  ANALYSIS

### A.  Standard of Review

"This court reviews the District Court's ruling on summary judgment *de novo*." *Feld v. Fireman's Fund Ins. Co.*, 909 F.3d 1186, 1193 (D.C. Cir. 2018). In reviewing a summary judgment motion, courts are required to "'examine the facts in the record and all reasonable inferences derived therefrom in a light most favorable to' the non-moving party." *Id.* (quoting *Robinson v. Pezzat*, 818 F.3d 1, 8 (D.C. Cir. 2016)). We must then determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because

they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

## B. The Law of the Case Doctrine Controls the Disposition of the First Issue

The District's principal argument in this case is that, under LEOSA, "to carry a concealed weapon, an individual must be both a qualified retired law enforcement officer *and* hold an identification issued by his former government employer stating that he was a law enforcement officer." District Br. at 14 (emphasis in original). Therefore, according to the District, "since [Appellees] lack the proper identification, they have no enforceable right that is remediable under Section 1983." *Id.* at 15.

The District has not challenged the District Court's conclusion that Appellees meet the requirements of Section 926C(c)(1)–(3) of LEOSA, *i.e.*, that Appellees separated in good standing, had statutory powers of arrest, and served for an aggregate of 10 years or more. Rather, the District contends that, absent proper identification, Appellees "are not intended beneficiaries under LEOSA and have no enforceable right that is remediable under Section 1983 in light of *Blessing*." District Br. at 17. This argument is merely a rehash of the issue that was decided by the court in *DuBerry I*. Therefore, we reject it, both because it lacks merit and because there are no "extraordinary circumstances" here that compel us to revisit an issue that is controlled by the law of the case. *United States v. Thomas*, 572 F.3d 945, 948 (D.C. Cir. 2009) (citation omitted).

Section 1983 provides a remedy for the deprivation of federal constitutional and statutory rights by any person acting under color of state law. 42 U.S.C. § 1983; *see also Maine v.*

*Thiboutot*, 448 U.S. 1, 4 (1980); *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 105–06 (1989). Section 1983 relief is also available when officials act under color of District of Columbia law. *See, e.g.*, *Dist. Props. Assocs. v. District of Columbia*, 743 F.2d 21, 26 (D.C. Cir. 1984). In *DuBerry I*, we found that "LEOSA's plain text, purpose, and context show that Congress intended to create a concrete, individual right to benefit individuals like [Appellees] and that is within the competence of the judiciary to enforce." 824 F.3d at 1054–55 (citation omitted). We therefore held that Appellees had "sufficiently alleged that the federal right they seek to enjoy has been unlawfully deprived by the District of Columbia to be remediable under Section 1983." *Id.* at 1055.

In amplifying this holding, the court in *DuBerry I* made it clear that,

> [i]n enacting the requirements for "qualified law enforcement officers" to claim this right, Congress gave every signal that it contemplated no state reevaluation or redefinition of federal requirements. Consequently, the firearms certification requirement does not define the right itself but is rather a *precondition to the exercise of that right*.

824 F.3d at 1055 (emphasis added). And, pursuant to our decision in *DuBerry I* that the firearms certification requirement in subsection (d)(2)(B) does not define the LEOSA right, the District Court rejected "a different version of [the District's] argument," one that was based on the photographic identification requirement in subsection (d)(2)(A). 316 F. Supp. 3d at 57. The District Court correctly found that,

just as the firearm certification did not define the LEOSA right, the possession of a photographic identification that is required to exercise the right does not define the LEOSA right.

316 F. Supp. 3d at 57. This finding necessarily flows from this court's decision in *DuBerry I*. And we affirm it.

In *DuBerry I*, we explained that LEOSA's "plain text, purpose, and context" demonstrated that Congress intended for individuals like Appellees to have a "concrete, individual right." 824 F.3d at 1054. We rejected the District's "attachment" theory, which erroneously suggested that individuals possess no right until they obtain a firearms certification. *See id.* at 1055. Our analysis does not change due to the substitution of another provision in the same subsection of LEOSA. Therefore, the disposition of this issue is controlled by the law of the case, which is found in the court's decision in *DuBerry I*.

The "law of the case" doctrine "reflects the understanding that '[i]nconsistency is the antithesis of the rule of law.'" *United States v. Philip Morris USA Inc.*, 801 F.3d 250, 257 (D.C. Cir. 2015) (alteration in original) (quoting *LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (en banc)). When a different panel hears a case on its subsequent trip to the appellate court, absent "extraordinary circumstances," the second panel will not reconsider issues already decided. *Thomas*, 572 F.3d at 948 (citation omitted). No extraordinary circumstances exist in this case. *See id.* at 948–49 (explaining that "manifest injustice" and an intervening change in controlling law are primary examples of extraordinary circumstances).

In the first appeal of this case, the District argued that, under the first *Blessing* factor, Congress did not intend for Appellees to benefit from LEOSA because they were not "in possession of an identification required under subsection (d)." *See* Br. for District of Columbia at 16, *DuBerry I*, 824 F.3d 1046 (No. 15–7062). This court, in *DuBerry I*, rejected the contention that Appellees have no enforceable right until they obtain a firearms certification – one component of a subsection (d) identification. Since a firearms certification and a photographic identification are each required for a subsection (d)–compliant identification, the same reasoning from *DuBerry I* forecloses the District's argument here. *See PNC Fin. Servs. Grp. v. Comm'r*, 503 F.3d 119, 126 (D.C. Cir. 2007) ("Law-of-the-case doctrine encompasses issues decided both explicitly and by necessary implication." (citation omitted)). While each requirement is a *precondition* to exercising concealed carry, neither *defines* this right. Accordingly, we once again state that LEOSA creates an individual right to carry that is remediable under Section 1983.

## C. The District's "Causation" Argument is Meritless

The District's alternative argument is that it is entitled to judgment because its actions did not cause Appellees to be deprived of any concealed-carry right under LEOSA. In other words, the District contends that, "[a]ssuming that [Appellees] have a viable Section 1983 claim, the District is also entitled to judgment because the actions about which [Appellees] complain—the District's failure to issue them a form necessary to obtain the training certification required by Subsection 926C(d)(2)(B)—did not deprive them of any right under LEOSA." District Br. at 26. This is a perplexing claim, to say the least.

First, this argument is essentially the same as the District's principal argument, discussed above. That is, that under LEOSA, "to carry a concealed weapon, an individual must be both a qualified retired law enforcement officer *and* hold an identification issued by his former government employer stating that he was a law enforcement officer." District Br. at 14 (emphasis in original). As we have already explained, this claim fails under the law of the case.

The District also claims that, under tort law principles, Appellees have "fail[ed] to establish entitlement to relief under 42 U.S.C. § 1983 because they have not established that they possess the requisite identification cards required to have the right to carry a firearm across state lines under LEOSA." District Reply Br. at 15; *see also* District Br. at 14. In other words, the District contends that "a defendant must have 'caused' the deprivation of rights to establish Section 1983 liability." District Reply Br. at 15. The problem with this argument is that it is based on a blatant mischaracterization of Appellees' claim. As we noted at the outset of this opinion, and as we explain further below, Appellees are not seeking a declaration that they are entitled to carry firearms pursuant to LEOSA. Rather, they have challenged the District's unlawful refusal to certify them as "qualified retired law enforcement officers," which is necessary in order for them to pursue the right to carry under LEOSA.

The District's Section 1983 argument, invoking tort law principles, *see* District Br. at 27–28, is a smoke screen. The District's *proximate cause* and *but-for* notions of "causation" do not in any way advance its argument. The District, by its own admission, has refused to acknowledge that Appellees are qualified retired law enforcement officers. In fact, when Appellees requested necessary documentation, DCDOC explicitly indicated that they did not meet LEOSA's definition.

Therefore, the District is the cause of Appellees' inability to be considered qualified retired law enforcement officers.

In framing its alternative argument, the District never uses the word "standing." It appears, however, that the District's argument strongly suggests that, for want of *causation*, Appellees lack Article III standing to pursue their action against the District. We disagree.

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) (quoting U.S. Const. art. III, § 2).

> In order to demonstrate standing, a party must allege (and ultimately prove) that it [ ] has suffered an "injury in fact" to a judicially cognizable interest "that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." *Summers*, 555 U.S. at 493 (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–181 (2000)); *see also Defs. of Wildlife*, 504 U.S. at 560–63. "The 'irreducible constitutional minimum of standing'" is thus often summarized as "requir[ing] that a plaintiff demonstrate three elements: (1) injury in fact; (2) causation; and (3) redressability." *Scenic Am., Inc. v. U.S. Dep't of Trans.*, 836 F.3d 42, 48 (D.C. Cir. 2016) (quoting *Defs. of Wildlife*, 504 U.S. at 560–61).

EDWARDS & ELLIOTT, FEDERAL STANDARDS OF REVIEW—REVIEW OF DISTRICT COURT DECISIONS AND AGENCY ACTIONS 43–44 (3d ed. 2018).

In addition to establishing that it has suffered an injury-in-fact, a litigant must also demonstrate causation and redressability. "Causation and redressability are closely related[,] like two sides of a coin." *West v. Lynch*, 845 F.3d 1228, 1235 (D.C. Cir. 2017). Nonetheless each has a distinct focus. Causation requires "a fairly traceable connection" between the complained-of conduct of the defendant and the injury claimed. *Steel Co.*, 523 U.S. at 103; *accord DaimlerChrysler*, 547 U.S. at 342. Redressability requires a litigant to demonstrate "a likelihood that the requested relief will redress the alleged injury." *Steel Co.*, 523 U.S. at 103; *see also Defs. of Wildlife,* 504 U.S. [at] 561 ("[I]t must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.") Consequently, consideration of causation can be analytically distinct from redressability, and vice versa.

*Id.* at 47.

The District suggests that Appellees lack Article III standing because any injuries that they have suffered were not caused by the District. And, relatedly, the District claims that because it did not cause Appellees' injuries, a judgment against the District will not afford Appellees any redress.

When the District Court first heard this case in 2015, the District challenged Appellees' Article III standing. After carefully considering the matter, the District Court rejected the District's arguments. Regarding injury-in-fact, the District Court

readily conclude[d] that [Appellees] have suffered an injury to their "cognizable interest" in proceeding with

their applications to obtain the right to carry a concealed firearm, as permitted by LEOSA. . . . [Appellees] have made efforts to effectuate their *own* (alleged) rights under LEOSA, efforts that they claim [DCDOC] has stymied.

. . . .

[B]ecause all [Appellees] have already been refused the prior employment certification requested from [DCDOC] and are still unable to proceed in obtaining a concealed carry permit, the injury to [Appellees'] "cognizable interests" (or alleged "legal rights") has already occurred—and continues to occur, absent a change in [DCDOC's] legal position.

*DuBerry v. District of Columbia*, 106 F. Supp. 3d 245, 255–56 (D.D.C. 2015) (citations omitted).

Regarding *causation*, the District Court found that

[t]he parties do not dispute causation. . . . The Court nonetheless readily concludes that causation is satisfied. [Appellees] allege that [DCDOC's] erroneous interpretation of LEOSA and resultant refusal to recognize [Appellees] as retired "law enforcement officers" directly caused their injury-in-fact.

*Id.* at 257.

And, finally, regarding *redressability*, the District Court found that,

[h]ere again, the Court's analysis is straightforward. A "favorable decision" for [Appellees] would result in an order directing [the District] to "certify and/or

acknowledge [Appellees] as retired law enforcement officers" under LEOSA. This order would "likely" (if not certainly) enable [Appellees] to obtain the prior employment certification from [DCDOC] indicating that they were indeed "law enforcement officers" under LEOSA, thereby remedying their injury-in-fact.

*Id.* (citations omitted).

When the District Court's decision was reviewed by this court in *DuBerry I*, Article III standing was neither raised by the District nor considered by the court. Appellees obviously were seen to have Article III standing, as the District Court correctly found, so there was nothing for this court to say on the matter.

Having already lost on the matter of Article III standing, the District now tries, in vain, to cast its argument as if it involves something other than the causation and redressability prongs of Article III standing. Here is how the District now frames its alternative claim:

Despite the need to establish causation, [Appellees] failed to show that, but for the District's refusal to complete their employment certification forms, they would have been entitled to carry under LEOSA. This is because they failed to show that they have the requisite agency-issued identifications needed to carry under LEOSA. And because [Appellees] cannot carry firearms under LEOSA without the necessary identification— which, again, they do not have—[Appellees] cannot establish that the denial of the certification form caused them to be deprived of any right.

District Br. at 16. These are precisely the same issues that were considered and correctly rejected by the District Court when it addressed Appellees' Article III standing. We will not revisit these claims because the District Court's decision is on the mark.

The District has persisted in this litigation in suggesting that Appellees have no remediable injuries because they are not entitled to carry firearms under LEOSA without the identifications specified under subsection (d) of the statute. But, as noted at the outset of this opinion, the District's position completely mischaracterizes the relief sought and obtained by Appellees in this litigation. Appellees are not seeking a declaration that they are entitled to carry firearms pursuant to LEOSA. Rather, they have sought to overturn the District's unlawful refusal to certify them as "qualified retired law enforcement officers" under subsection (c) of the statute, which is necessary in order for them to pursue the right to carry under LEOSA.

In the proceedings before the District Court, Appellees made it clear that they were not seeking any relief with regard to identifications. Cross-Mot. Summ. J. at 37–38, *DuBerry v. District of Columbia*, 316 F. Supp. 3d 43 (D.D.C. 2018) (No. 1:14-cv-01258-RC), ECF No. 59 ("From the outset of their case, [Appellees] have only sought relief as to the [DCDOC's] conduct of falsely claiming that [Appellees] were not law enforcement officers."). The District Court's decision confirms this:

> [Appellees] note explicitly that they have not asked this Court to address whether they have identification that satisfies the requirements of subsection (d). . . . The Court agrees that whether or not [Appellees] have sufficient identification is irrelevant for purposes of

determining whether they have met certain statutory preconditions to be considered "qualified retired law enforcement officers."

316 F. Supp. 3d at 58. And Appellees have not raised the issue with this court.

The District's argument not only mischaracterizes Appellees' position, it is also wrong. The District continues to contend that Appellees are barred from seeking relief to require the District to recognize them as "qualified retired law enforcement officers" under LEOSA *because* they do not have the requisite agency-issued identifications needed to carry under LEOSA. This contention is a classic non sequitur. The premise does not support the conclusion. As explained above, the District Court correctly "reject[ed] the District's argument that [Appellees] must prove that they have photographic identification that satisfies subsection (d) before the Court can grant their motion for summary judgment." 316 F. Supp. 3d at 57. We affirm the District Court's conclusion, which is rooted in this court's decision in *DuBerry I*.

The District Court's opinion also usefully explains that the court

> [did] not conclude that [Appellees] are unalterably "qualified retired law enforcement officers" for purposes of LEOSA. This is because some of the statutory preconditions for "qualified retired law enforcement officers" are mutable characteristics. For example, no court could accurately declare on the basis of motions and responses filed months prior that a retired officer certainly is not "under the influence of alcohol or another intoxicating or hallucinatory drug or substance" such that he meets the requirements of subsection (c)(7).

Instead, this Court only concludes that [Appellees] meet the requirements listed in subsection (c)(1)–(3). Specifically, [Appellees] each separated from service in good standing with a public agency as a law enforcement officer; before such separation, they each were authorized to engage in or supervise the incarceration of persons and they had statutory powers of arrest; and before separation, they each served as a law enforcement officer for an aggregate of 10 years or more.

316 F. Supp. 3d at 58 n.8.

The critical point here is that the District's refusal to certify Appellees is "an absolute barrier" to the exercise of their rights under LEOSA. *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 261 (1977). Therefore, Appellees have standing to seek to remove this barrier. *See id.*; *see also Sierra Club v. U.S. Dep't of the Interior*, 899 F.3d 260, 285 (4th Cir. 2018) ("The removal of even one obstacle to the exercise of one's rights, even if other barriers remain, is sufficient to show redressability.").

The law is clear that a party has standing to pursue a claim so long as the relief sought will constitute a "necessary first step on a path that could ultimately lead to relief fully redressing the [claimant's] injury." *Power Co. of Am., L.P. v. FERC*, 245 F.3d 839, 842 (D.C. Cir. 2001) (citation omitted); *Tel. & Data Sys., Inc. v. FCC*, 19 F.3d 42, 47 (D.C. Cir. 1994) (same); *Hazardous Waste Treatment Council v. EPA*, 861 F.2d 270, 273 (D.C. Cir. 1988) (same); *see also Int'l Ladies' Garment Workers' Union v. Donovan*, 722 F.2d 795, 811 n.27 (D.C. Cir. 1983) (explaining the underlying rationale for redressability requirement); *Tierney v. Schweiker*, 718 F.2d 449, 456 (D.C. Cir. 1983) (reversing denial of a declaratory

judgment that "will put an end to the uncertainty and insecurity faced by the appellants").

Appellees acknowledge that, even if they obtain declaratory relief, they "may not prevail" in the long run if they do not secure the identifications required by LEOSA; "but [they] cannot prevail unless we [grant declaratory relief], and that is enough to ensure that the relief requested will produce tangible, meaningful results in the real world." *Tel. & Data Sys.*, 19 F.3d at 47 (citation omitted).

The District Court's judgment in Appellees' favor will eliminate "[t]he harm of being categorically blocked from any ability to access the core concealed-carry right." Appellees Br. at 34. We agree. The relief afforded Appellees will meaningfully redress their concrete injuries caused by the District's unlawful refusals to certify them as qualified retired law enforcement officers.

## III. CONCLUSION

For the reasons stated herein, the judgment of the District Court is affirmed.

*So ordered.*

ROGERS, *Circuit Judge*, concurring in part: I join the court in affirming the grant of summary judgment because our opinion in *DuBerry v. District of Columbia,* 824 F.3d 1046 (D.C. Cir. 2016) ("*DuBerry I*"), effectively bars the two contentions of the District of Columbia government in the instant appeal. The law of the case doctrine bars its first contention that appellees possess no enforceable right under the Law Enforcement Officers Safety Act ("LEOSA") if they lack the identification card necessary to exercise their LEOSA right. Op. 13–16. To the extent any room is left after *DuBerry I* for its second, alternative tort-causation contention, the District of Columbia government's view that it did not cause the deprivation of appellees' LEOSA right overlooks the limited nature of the wrong appellees now allege; it is the District of Columbia government's refusal to certify appellees as qualified retired law enforcement officers that has prevented them from obtaining documentation necessary to access their LEOSA right. Op. 16–18.

The court's analysis, therefore, need not go further. Yet the court does. Op. 18–25. The parties have understood the current dispute to be independent of any suggestion that appellees lack standing under Article III of the Constitution. The District of Columbia government did not appeal the ruling that appellees had standing on their LEOSA claim, *DuBerry v. District of Columbia*, 106 F. Supp. 3d 245, 253–58 (D.D.C. 2015), much less renew its Article III challenge in appealing the summary judgment order on remand, *DuBerry v. District of Columbia*, 316 F. Supp. 3d 43 (D.D.C. 2018). Instead, the District of Columbia government has attempted to pursue its substantive objection to this court's decision in *Duberry I* and challenged the grant of summary judgment based on a theory of tort causation, which is distinct from the causation requirement for Article III standing, *see Bennett v. Spear*, 520 U.S. 154, 168 (1997); *Tozzi v. Dep't of Health & Human Servs.*, 271 F.3d 301, 308 (D.C. Cir. 2001). In these

circumstances, there is no basis for the court to assume the District of Columbia government also intended to raise or "strongly suggests" that appellees have failed to establish causation for purposes of standing, Op. 4, 18, when it so clearly (but non-meritoriously) framed its causation contention in terms of tort causation necessary for liability under 42 U.S.C. § 1983. Appellant's Br. 26–29; Reply Br. 14–15. Consequently, I do not join the court's discussion of standing.